Richardson, Ch. J.,
delivered the opinion of the court:
The claimant alleges in his petition that on the 16th of November, 1885, he was appointed a paymaster’s clerk in the Navy; that he accepted the appointment November 19, 1885, took.the oath of office on the same day, and entered upon his duties, and that he traveled 1, 041 miles, under orders, for which he has not been'paid. He claims 8 cents a mile, under the provisions of the Act of June 30, 1876, chapter 159 (Supp. Bev. Stat., 218, 219, par. 1), allowing that rate for travel to “ such officers [of the Navy] while so engaged [on public business] in lieu of their actual expenses.”
The defendants demur, upon the ground that the claimant is not an officer, and so not entitled to the benefit of the act. That presents the only issue in the case.
The claimant was appointed by a paymaster, with the approval of his commanding officer, according to the Begulations, and his appointment was also approved by the Secretary of the Navy, and he took the required oath of office. This would be a valid appointment to office, within the meaning of the Constitution, if the position held by the claimant is an office and the Secretary of the Navy is authorized to make or approve such appointment. (United States v. Hartwell, 6 Wall., 393.)
*297 statutes recognize and provide for paymasters’ clerks in the Navy, but are silent as to the manner of appointment (Rev. Stat., §§ 1386-1388); and Eevised Statutes, section 1410, classes them among' “ all officers not holding commissions or warrants, or who are not entitled to them,” by excepting them, with others, from such officers as are to be deemed petty officers.
Upon the authority of Moore’s Case (95 U.S. R., 760) it may be that the claimant should be held to be an officer in the constitutional sense of that term. Moore was called a “ passed assistant surgeon ” in the Medical Corps of the Navy. The statutes provided that the Medical Corps should consist of fifteen medical directors, fifteen medical inspectors, fifty surgeons, and one hundred assistant surgeons (Rev. Stat., § 1368), without mentioning passed assistant surgeons; that all appointments in the Medical Corps should be made with the advice and consent of the Senate (id., § 1369); that no person should be appointed surgeon until lie had served as an assistant surgeon two years, and had been examined and approved for such appointment, &c. (id., § 1371). It had been the custom of the Navy Department to examine assistant surgeons for promotion as surgeons after a certain period of service, and often long before vacancies occurred to which they could be appointed, and when so examined and passed and while waiting for promotion to the next grade, that of surgeon, upon the occurring of vacancies they were called “ passed assistant surgeons.” By that designation they were recognized in statutes fixing their pay and their rank, but no provision ivas made or their appointment.
Moore was an assistant surgeon who had successfully passed his examination for promotion to the grade of surgeon, and had been notified by the Secretary of the Navy that the report of the board of examiners was approved, and “from that date he would be regarded as a passed assistant surgeon.”
The Supreme Court held that “the place of passed assistant surgeon is an office, and the notification by the Secretary of the Navy was a valid appointment to it,” citing The United States v. Hartwell (6 Wall., 385), and the Constitution, Art. II, sec. 2.
The position of the claimant in the Navy would seem to be as well established by law as an office, and his appointment to it as constitutionally made, as the position and appointment of a passed assistant surgeon of the Navy.
*298 In the present case, however, it is not necessary to go as far as the Supreme Court went in Moore’s Case, nor to determine the question whether or not paymasters’ clerks are officers within the meaning of the Constitution, hut only to find whether or not Congress intended to include them among officers of the-Navy to whom mileage is allowed by the act of 1876, even though they be so in a different sense from that in which the word is used in the Constitution.
In Hendee’s Case, recently decided (22 C. Cls. R., 134), we held that as paymasters’ clerks were often called and regarded as officers in some sense, in statutes, in Regulations of the Navy, in orders of the Secretary of the Navy, and injudicial decisions, as therein pointed out, they must be taken to be officers within the meaning of the Act of March 3, 1883, chapter 97 (22 Static, 473), requiring that “ all officers of the Navy shall be credited with the actual time they may have served as officers or enlisted men in the regular or volunteer Army or Navy, or both,” for the purpose of computing longevity pay, even though they might not be strictly and technically such within the meaning of the word as used in the Constitution with reference to appointments.
It seems to be generally understood that the words officers and enlisted men include the whole personnel of the Navy, regarding as enlisted men all those who sign articles of agreement, called “ shipping articles,’’ which paymasters’ clerks da not, and whose only required oath is that they make true statement of their age according to the best of their knowledge and belief (Regulations of 1876, ch. XXV, par. 3), and as officers, all others who take the oath of office prescribed by Revised Statutes, section 1757, to be taken by all persons elected or appointed to any office of honor or trust under the Government of the United States, as do paymasters’ clerks, as appears by copy of the claimant’s oath of office attached to his petition.
Section 1417 of the Revised Statutes defines who are enlisted men and limits their number; and paymasters’ clerks are not among them, while they are among those who take the oath of office.
On board ship, paymasters’ clerks are quartered and mess with officers, and are everywhere treated as such, whether at sea or on shore.
*299 In United States v. Tinklepaugh (3 Blatch., 430, 431) it was held that a deputy marshal appointed by the marshal, wiihout the approval of higher authority, was an officer, because, as was said in the opinion of the court, “ the statute shows that Congress deemed deputies of the marshal to be officers of the United States.” The court in that case did not deem it necessary that a person should be appointed according to the provisions of the Constitution in order to constitute him an officer of the United States within the meaning of the statutes there referred to.
Under these circumstances, and those to which we referred in Sendee’s Case, we may well infer that in the passage of laws like that under consideration Congress used the word officers in its general, popular, and broad signification, rather than in its narrow and technical one, derived wholly from the operation of provisions of the Constitution in relation to certain appointments, and which as one of the distinctions in the meaning of the word has not yet found a place in the dictionaries.
At the argument both parties claimed that contemporaneous interpretations of the statute by the accounting officers of the Treasury supported their respective positions. So far as such interpretation is entitled to weight, we think, when considered on principle, that it is favorable to the claimant’s case.
It appears by the allegations of the petition, admitted by the demurrer, that ever since the passage of the act in 1876, paymasters’ clerks have uniformly been paid mileage while attached to sea-going vessels, and have not been so paid when engaged on shore duty. There is no warrant for such a distinction. It is purely arbitrary. The statute allows mileage to officers of the Navy when traveling on public business, and if paymasters’ clerks are officers in any sense, they are entitled to mileage for travel, whatever be the public duty in which they are engaged. Continuously paying them mileage when attached to sea-going vessels concedes that they are officers, and if that be admitted in the one case it cannot be denied in the other.
Under another act the accounting officers made a similar distinction, which the Supreme Court overruled. The act of March 3,1835, chapter 27, gave mileage at the rate of ten cents a mile to officers of the Navy while traveling under orders. For forty years the accounting officers had interpreted this as applying *300 only to travel within the United States; while to officers traveling by sea or out of the country they allowed actual expenses and not mileage. The Supreme Court held that the statute made no such distinction, and that forty years’ practice of the Department did not and could not change the law. Their right to mileage when traveling under orders, by sea and by land, at home and abroad, was upheld by the court. (United States v. Temple, 105 U. S. R., 97; United States v. Graham, 110 id., 219.)
In our opinion Congress intended to include paymasters’ clerks among officers of the Navy to whom mileage is allowed by the act of 1876.
The demurrer is overruled and judgment will be entered for the claimant in the sum of $83.28, with leave to have the judgment set aside if the defendants elect within ten days to plead to the petition.
Nott, J., was not present when the case was decided.