Peelle, J.,
delivered the opinion of the court:
The claimant, a chaplain in the United States Navy, seeks to recover the difference between the pay he received under Revised Statutes, section 1556, during his first five years’ service, and the additional pay he now claims under the act of March 3, 1899, section 13. (30 Stat. L., 1004, 1007.)
The facts, about which there is no controversy, are that, on February 18, 1881, the^claimant was appointed from civil life a chaplain in the United States Navy, and has ever since held that office, performed its duties, and received the pay attached thereto. Section 13, upon which the claimant grounds his right to recovery, reads:
“That, after June thirtieth, eighteen hundred and ninety-nine, commissioned officers of the line of the Navy and of the *334 Medical and Pay Corps shall receive the same pay and allowances, except forage, as are or may be provided by or in pursuance of law for the officers of corresponding rank in the Army: Provided, That such officers when on shore duty7 shall receive the allowances but. fifteen per centum less pay7 than when oil sea duty; but this provision shall not apply to warrant officers commissioned under section twelve of this act: Provided further, That when naval officers are detailed for shore duty beyond seas they' shall receive the same pay and allowances as are or may be provided by or in pursuance of law for officers of the Army detailed for duty in similar places:
Provided further, That naval chaplains who do not possess relative rank shall have the rank of lieutenant in the Navy; and that all officers, including warrant officers, who have been or may be appointed to the Navy from civil life shall, on the date of appointment, be credited, for computing their pay, with five years’ service. And all provisions of law authorizing the distribution among captors of the whole or any7 portion of the proceeds of vessels, or any property hereafter captured, condemned as prize, or providing for the payment of bounty for the sinking or destruction of vessels of the enemy hereafter occurring in time of war, are hereby7 repealed: And provided further, That no provision of this act shall operate to reduce the present pay' of any commissioned officer now in the Navy; and in any7 case in which the pay of such an officer would otherwise be reduced he shall continue to receive pay7 according to existing law: And provided further, That nothing in this act shall operate to increase or reduce the pay of any officer now on the retired list of the Navy. ”
That section, as its title indicates, is a part of the “act to reorganize and increase the efficiency of the personnel of the Navy7 .and Marine Corps of the United States.”
The question is, Does the language of the third proviso operate retroactively7, or is it limited in its scope to those officers only whose pay would thereby7 be increased after June 30, 1899, as was held by7 the Assistant Comptroller?
The first two provisos clearly7 apply7 to the class of officers described in the purview or body7 of the section — i. e., to “commissioned officers of .the line of the Navy and of the Medical and Pay7 Corps;” but it will be noted that the third proviso, though it contains the words- “provided further,” refers to an entirely different class of officers — i. e., warrant officers (who in express terms are excepted from the purview or body7-of the section by7 the first proviso) and to “chap *335 lains, who do not possess relative rank,” and for that reason are given “the rank of lieutenant in the Navy.”
The general rule of law, says Mr. Justice Story in the case of the United States v. Dickson (15 Pet., 141, 176), “which has always prevailed and become consecrated almost as a maxim in the interpretation of statutes, that where the enacting clause is general in its language and objects and a proviso is afterwards introduced, that proviso is construed strictly and takes no case out of‘the enacting clause which does not fall fairly within its terms. In short, a proviso carves special exceptions only out of the enacting clause; and those who set up any such exception must establish it as being within the words as well as within the reason thereof. ”
The language of the proviso, though in the nature of independent legislation, applying to a different class of officers who are paid upon a different basis, yet considering the whole section and the reason and purpose of the legislation, we think the Congress intended that the words “after June thirtieth, eighteen hundred and ninety-nine ” should apply to all officers mentioned in the section. That fixes the beginning of their increased pay at the beginning of the fiscal year. '
But whether this latter be the correct construction is immaterial in this case, as the claimant was appointed from civil life in 1881, and if the proviso operates retroactively, so as to give him increased pay for services theretofore rendered, then it is immaterial whether his right became consummate upon the approval of the act or after June 30, 1899, for in either e^ent he would be entitled to recover.
Under Revised Statutes, section 1556, the pay of chaplains is fixed as follows:
“During the first five years after date of commission, when at sea, two thousand five hundred dollars; on shore duty, two thousand dollars; on leave, or waiting orders, one thousand six hundred dollars; after five years from such date, when at sea, two thousand eight hundred dollars; on shore duty, two thousand three hundred dollars; on leave, or waiting orders, one thousand nine hundred dollars.”
It will thus be seen that chaplains are entitled to but one lustrum of five years, after which their pajr is increased $300 per year for each class of service.
*336 What did the Congress intend by the use of. the words “ officers who have been * * * appointed to the Navy from civil life shall, on the date of appointment, be credited, for computing- their pay, with five years’ service? ”
That is to say, all officers “who have been or may be appointed to the Navy from civil life” shall be placed on an equality in respect to pay after June 30, 1899, so that chaplains serving less than five years prior to that date were entitled to be credited with five years’ service, not for the purpose of giving them additional pay for services theretofore rendered, but as a basis upon which to compute their future pay.
It was the method adopted by Congress for increasing the pay of officers appointed to the Navy from civil life, and is, in legal effect, the same as though the act had provided in express terms that after June 30,1899, the annual pay of chaplains who have been or may be appointed to the Navy from civil life shall be $2,800, etc.
With such a provision it could not be contended that the pay of those officers then receiving $2,800 per annum would be increased. Increase and equality in pay after June 30, 1899, is evidently what the Congress intended.
Retroactive laws are not looked upon with favor, and should not be applied unless the intent is expressed in such plain language as to admit of no other meaning. (Southerland on Statutory Construction, sec. 163 et seq.)
Even though the language used would seem upon other principles of interpretation to require a retroactive construction, yet in the absence of a clearly expressed intent to the contrary the presumption is against it. (Endlich on the Interpretation of Statutes, sec. 272 et seq.)
Assuming, as the claimant contends, that the language “ officers who have been * * * appointed ” shows an intent to include those who have reached their maximum pay, still the whole lang-uagó and purpose of the act must be construed together, and thus reading it we think it clear that what the Congress intended was that all officers who have been or may be appointed to the Navy from civil life shall, on the date of appointment, be credited with five years’ service, for the purpose of computing their pay, after June 30, 1899. The words “ for computing their pay ” limit the operation of *337 the language to future pay, and while those theretofore appointed are entitled to be credited with five years’ service equally with those thereafter appointed, yet such credit can only be given, for the purpose of computing their pay, after Juno 30,1899. Hence, those on that date who were receiving their maximum pay will necessarily be excluded from its provisions.
Otherwise the act bestows upon them a gratuity. True, the Congress have the authority to enact such laws, but in doing so they must use language that will admit of no other meaning.
In the Hawkins Case (19 C. Cls. R., 611) all officers in the Navy, upon the passage of the act of March 3, 1883 (22 Stat. L., 172), became entitled to credit, as a basis for longevity pay, for any prior actual service rendered by them as officers or enlisted men in the Regular or Volunteer Army or Navy, or both, and to receive all the benefits thereof “in the same manner as if all said service had been continuous and in the Regular Navy in the lower grade having graduated pay. ” And while the last proviso prohibits additional pay to'them during the time of their service in the Volunteer Army or Navy, it does not for their service in the Regular Navy, i. e., for their service in the Volunteer Army or Navy they are entitled to be credited for such service as though it had been continuously rendered in the Regular Navy in the lowest grade having graduated pay; and this was the holding of the Supreme Court in the case of United States v. Rockwell (120 U. S., 60, 62). Later, in the case of United States v. Foster (128 U. S., 435, 437), referring to the acts of 1882 and 1883, the court held, in substance, that those acts did not authorize a restatement of the pay accounts of such officers who served in the Regular or Volunteer Army or Navy so as to give them credit in the grade held by them prior to the passage of said acts, but that Congress only intended to give them credit in the grade held by them after those acts took effect for such prior service, counting the same as continuous in the Regular Navy. Thus will be seen a clear distinction between those acts and section 13 of the act in the present case, which merely authorizes a credit “for computing their pay, with five years’ service,” thus clearly implying that the credit to be given is for the basis of fixing their future pay.
*338 It can not be claimed that the interpretation given to the language of the proviso will operate to discriminate against those officers long in the service any more than any act of Congress would increasing the pay of such officers and making the same pay applicable to those thereafter appointed.
The petition was dismissed.